**1. SALE AND PURCHASE:** _____ FLORIDA PRESTIGE _____ ("Seller")
and _____ PATRICK GAILLARD _____ ("Buyer")
agree to sell and buy on the terms and conditions specified below the property described as:
Address: _____ 4748 WALDEN CIRCLE UNIT # 838, ORLANDO FL 32811 _____
County: _____ ORANGE COUNTY _____
Legal Description: WALDEN PALMS CONDOMINIUM 8444/2553 UNIT 38 BLDG 8
_____ IN COMMON ELEMENTS OFF _____ Tax ID No: _____ 17-23-29-8957-08-380 _____
together with all existing improvements and attached items, including fixtures, built-in furnishings, major appliances (including but not limited to range(s), refrigerator(s), dishwasher(s), washer(s), and dryer(s), _____ (#) ceiling fans (if left blank, all ceiling fans), light fixtures, attached wall-to-wall carpeting, rods, draperies and other window treatments as of Effective Date. The only other items included in the purchase are: ALL APPLIANCES: REFRIGERATOR, DISHWAHSER, STOVE TOP MICROWAVE, WASHER AND DRYER.
_____

The following attached items are excluded from the purchase: _____
_____

The real and personal property described above as included in the purchase is referred to as the "Property." Personal property listed in this Contract is included in the purchase price, has no contributory value and is being left for Seller's convenience.

**PRICE AND FINANCING**

**2. PURCHASE PRICE:** $ _____ 79,000.00 _____ payable by Buyer in U.S. currency as follows:
(a) $ 10,000.00 _____ Deposit received (checks are subject to clearance) on _____ JANUARY 13, 2012 _____ by
_____ for delivery to _____ SERFATY & GARCIA PA _____ ("Escrow Agent")
_____ Signature _____ Name of Company
(Address of Escrow Agent) _____ 4700 BISCAYNE BLVD STE 1430, MIAMI, FL _____
(Phone # of Escrow Agent) _____ 305-722-4555 _____
(b) $ _____ Additional deposit to be delivered to Escrow Agent by _____
_____ or _____ days from Effective Date. (10 days if left blank)
(c) _____ Total financing (see Paragraph 3 below) (express as a dollar amount or percentage)
(d) $ _____ Other: _____
(e) $ 69,000.00 _____ Balance to close (not including Buyer's closing costs, prepaid items and prorations). All funds paid at closing must be paid by locally drawn cashier's check, official bank check, or wired funds.

**3. FINANCING:** (Check as applicable) ☒ (a) Buyer will pay cash for the Property with no financing contingency.
☐ (b) Buyer will apply for new ☐ conventional ☐ FHA ☐ VA financing specified in paragraph 2(c) at the prevailing interest rate and loan costs based on Buyer's creditworthiness (the "Financing") within _____ days from Effective Date (5 days if left blank) and provide Seller with either a written Financing commitment or approval letter ("Commitment") or written notice that Buyer is unable to obtain a Commitment within _____ days from Effective Date (the earlier of 30 days after the Effective Date or 5 days prior to Closing Date if left blank) ("Commitment Period"). Buyer will keep Seller and Broker fully informed about loan application status, progress and Commitment issues and authorizes the mortgage broker and lender to disclose all such information to Seller and Broker. If, after using diligence and good faith, Buyer is unable to provide the Commitment and provides Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period, either party may cancel this Contract and Buyer's deposit will be refunded. Buyer's failure to provide Seller with written notice that Buyer is unable to obtain a Commitment within the Commitment Period will result in forfeiture of Buyer's deposit(s). Once Buyer provides the Commitment to Seller, the financing contingency is waived and Seller will be entitled to retain the deposits if the transaction does not close by the Closing Date unless (1) the Property appraises below the purchase price and either the parties cannot agree on a new purchase price or Buyer elects not to proceed, (2) the property related conditions of the Commitment have not been met (except when such conditions are waived by other provisions of this Contract), or (3) another provision of this Contract provides for cancellation.

**CLOSING**

**4. CLOSING DATE; OCCUPANCY:** Unless the Closing Date is specifically extended by the Buyer and Seller or by any other provision in this Contract, the Closing Date shall prevail over all other time periods including, but not limited to, inspection and financing periods. This Contract will be closed on FEBRUARY 15, 2012 ("Closing Date") at the time established by the closing agent, by which time Seller will (a) have removed all personal items and trash from the Property and swept the Property clean and (b) deliver the deed, occupancy and possession, along with all keys, garage door openers and access codes, to Buyer. If on Closing Date insurance underwriting is suspended, Buyer may postpone closing up to 5 days after the insurance suspension is lifted. If this transaction does not close for any reason, Buyer will immediately return all Seller-provided title evidence, surveys, association documents and other items.

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 1 of 8 Pages.
FAR-9 4/07 ©2007 Florida Association of Realtors® All Rights Reserved

55  **5. CLOSING PROCEDURE; COSTS:** Closing will take place in the county where the Property is located and may be conducted by
56  mail or electronic means. If title insurance insures Buyer for title defects arising between the title binder effective date and recording
57  of Buyer's deed, closing agent will disburse at closing the net sale proceeds to Seller and brokerage fees to Broker as per
58  Paragraph 19. In addition to other expenses provided in this Contract, Seller and Buyer will pay the costs indicated below.
59  **(a) Seller Costs:**
60  Taxes and surtaxes on the deed
61  Recording fees for documents needed to cure title
62  Other: _____
63  Seller will pay up to $_____ or _____ % (1.5% if left blank) of the purchase price for repairs to warranted items ("Repair
64  Limit"), and up to $_____ or _____ % (1.5% if left blank) of the purchase price for wood-destroying organism treatment
65  and repairs ("WDO Repair Limit"); and up to $_____ or _____ % (1.5% if left blank) of the purchase price for costs
66  associated with closing out open permits and obtaining required permits for unpermitted existing improvements ("Permit Limit").
67  **(b) Buyer Costs:**
68  Taxes and recording fees on notes and mortgages
69  Recording fees on the deed and financing statements
70  Loan expenses
71  Lender's title policy
72  Inspections
73  Survey
74  Flood insurance, homeowner insurance, hazard insurance
75  Other: _____
76  **(c) Title Evidence and Insurance:** Check (1) or (2):
77  ☐ **(1)** The title evidence will be a Paragraph 10(a)(1) owner's title insurance commitment. ☐ Seller will select the title agent
78  and will pay for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and pay
79  for the owner's title policy, search, examination and related charges or ☐ Buyer will select the title agent and Seller will pay
80  for the owner's title policy, search, examination and related charges.
81  ☒ **(2)** Seller will provide an abstract as specified in Paragraph 10(a)(2) as title evidence. ☐ Seller ☒ Buyer will pay for the
82  owner's title policy and select the title agent. Seller will pay fees for title searches prior to closing, including tax search and
83  lien search fees, and Buyer will pay fees for title searches after closing (if any), title examination fees and closing fees.
84  **(d) Prorations:** The following items will be made current (if applicable) and prorated as of the day before Closing Date: real
85  estate taxes, interest, bonds, assessments, association fees, insurance, rents and other current expenses and revenues of the
86  Property. If taxes and assessments for the current year cannot be determined, taxes shall be prorated on the basis of taxes for
87  the preceding year or as of the day before Closing Date and shall be computed and readjusted when the current taxes are
88  determined with adjustment for exemptions and improvements. If there are completed improvements on the Property by
89  January 1 of the year of the Closing Date, which improvements were not in existence on January 1 of the prior year, taxes shall
90  be prorated based on the prior year's millage and at an equitable assessment to be agreed upon by the parties prior to Closing
91  Date, failing which, request will be made to the County Property Appraiser for an informal assessment taking into consideration
92  available exemptions. If the County Property Appraiser is unable or unwilling to perform an informal assessment prior to Closing
93  Date, Buyer and Seller will split the cost of a private appraiser to perform an assessment prior to Closing Date. Nothing in this
94  paragraph shall act to extend the Closing Date. This provision shall survive closing.
95  **(e) Special Assessment by Public Body:** Regarding special assessments imposed by a public body, Seller will pay (i) the full
96  amount of liens that are certified, confirmed and ratified before closing and (ii) the amount of the last estimate of the assessment
97  if an improvement is substantially completed as of Effective Date but has not resulted in a lien before closing, and Buyer will pay
98  all other amounts. If special assessments may be paid in installments ☐ Buyer ☐ Seller (if left blank, Buyer) shall pay
99  installments due after closing. If Seller is checked, Seller will pay the assessment in full prior to or at the time of closing. Public
100 body does not include a Homeowner Association or Condominium Association.
101 **(f) Tax Withholding:** Buyer and Seller will comply with the Foreign Investment in Real Property Tax Act, which may require
102 Seller to provide additional cash at closing if Seller is a "foreign person" as defined by federal law.
103 **(g) Home Warranty:** ☐ Buyer ☐ Seller ☐ N/A will pay for a home warranty plan issued by _____ at a
104 cost not to exceed $_____. A home warranty plan provides for repair or replacement of many of a home's mechanical
105 systems and major built-in appliances in the event of breakdown due to normal wear and tear during the agreement period.

## PROPERTY CONDITION

107 **6. INSPECTION PERIODS:** Buyer will complete the inspections referenced in Paragraphs 7 and 8(e)(2) by _____
108 _____ (the earlier of 10 days after the Effective Date or 5 days prior to Closing Date if left blank) ("Inspection Period");
109 the wood-destroying organism inspection by _____ _____ (at least 5 days prior to closing, if left
110 blank); and the walk-through inspection on the day before Closing Date or any other time agreeable to the parties; and the
111 survey referenced in Paragraph 10(c) by _____ _____ (at least 5 days prior to closing if left blank).

112 Buyer (PC) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 2 of 8 Pages.
FAR-9  4/07  © 2007  Florida Association of Realtors®  All Rights Reserved

113 **7. REAL PROPERTY DISCLOSURES:** Seller represents that Seller does not know of any facts that materially affect the value
114 of the Property, including but not limited to violations of governmental laws, rules and regulations, other than those that Buyer
115 can readily observe or that are known by or have been disclosed to Buyer.

116 (a) **Energy Efficiency:** Buyer acknowledges receipt of the energy-efficiency information brochure required by Section 553.996,
117 Florida Statutes.

118 (b) **Radon Gas:** Radon is a naturally occurring radioactive gas that, when it has accumulated in a building in sufficient
119 quantities, may present health risks to persons who are exposed to it over time. Levels of radon that exceed federal and
120 state guidelines have been found in buildings in Florida. Additional information regarding radon and radon testing may be
121 obtained from your county public health unit. Buyer may, within the Inspection Period, have an appropriately licensed person
122 test the Property for radon. If the radon level exceeds acceptable EPA standards, Seller may choose to reduce the radon
123 level to an acceptable EPA level, failing which either party may cancel this Contract.

124 (c) **Flood Zone:** Buyer is advised to verify by survey, with the lender and with appropriate government agencies which flood
125 zone the Property is in, whether flood insurance is required and what restrictions apply to improving the Property and rebuilding
126 in the event of casualty. If the Property is in a Special Flood Hazard Area or Coastal High Hazard Area and the buildings are built
127 below the minimum flood elevation, Buyer may cancel this Contract by delivering written notice to Seller within 20 days from
128 Effective Date, failing which Buyer accepts the existing elevation of the buildings and zone designation of the Property.

129 (d) **Homeowners' Association:** If membership in a homeowners' association is mandatory, an association disclosure
130 summary is attached and incorporated into this Contract. BUYER SHOULD NOT SIGN THIS CONTRACT UNTIL
131 BUYER HAS RECEIVED AND READ THE DISCLOSURE SUMMARY.

132 (e) **PROPERTY TAX DISCLOSURE SUMMARY:** BUYER SHOULD NOT RELY ON THE SELLER'S CURRENT PROPERTY
133 TAXES AS THE AMOUNT OF PROPERTY TAXES THAT BUYER MAY BE OBLIGATED TO PAY IN THE YEAR SUBSEQUENT
134 TO PURCHASE. A CHANGE OF OWNERSHIP OR PROPERTY IMPROVEMENTS TRIGGERS REASSESSMENTS OF THE
135 PROPERTY THAT COULD RESULT IN HIGHER PROPERTY TAXES. IF YOU HAVE ANY QUESTIONS CONCERNING
136 VALUATION, CONTACT THE COUNTY PROPERTY APPRAISER'S OFFICE FOR FURTHER INFORMATION.

137 (f) **Mold:** Mold is part of the natural environment that, when accumulated in sufficient quantities, may present health risks to
138 susceptible persons. For more information, contact the county indoor air quality specialist or other appropriate professional.

139 (g) **Coastal Construction Control Line:** If any part of the Property lies seaward of the coastal construction control line as
140 defined in Section 161.053 of the Florida Statutes, Seller shall provide Buyer with an affidavit or survey as required by law
141 delineating the line's location on the Property, unless Buyer waives this requirement in writing. The Property being purchased
142 may be subject to coastal erosion and to federal, state, or local regulations that govern coastal property, including delineation
143 of the coastal construction control line, rigid coastal protection structures, beach nourishment, and the protection of marine
144 turtles. Additional information can be obtained from the Florida Department of Environmental Protection, including whether
145 there are significant erosion conditions associated with the shoreline of the Property being purchased.

146 ❑ Buyer waives the right to receive a CCCL affidavit or survey.

147 **8. MAINTENANCE, INSPECTIONS AND REPAIR:** Seller will keep the Property in the same condition from Effective Date until
148 closing, except for normal wear and tear ("Maintenance Requirement") and repairs required by this Contract. Seller will provide
149 access and utilities for Buyer's inspections. Buyer will repair all damages to the Property resulting from the inspections,
150 and return the Property to its pre-inspection condition and provide Seller with paid receipts for all work done on Property upon its
151 completion. If Seller is unable to complete required repairs or treatments or meet the Maintenance Requirement prior to
152 closing, Seller will give Buyer a credit at closing for the cost of the repairs and maintenance Seller was obligated to perform. At
153 closing, Seller will assign all assignable repair and treatment contracts to Buyer and provide Buyer with paid receipts for all
154 work done on the Property pursuant to the terms of this Contract. At closing, Seller will provide Buyer with any written
155 documentation that all open permits have been closed out and that Seller has obtained required permits for improvements to
156 the Property.

157 (a) **Warranty, Inspections and Repair:**

158 (1) **Warranty:** Seller warrants that non-leased major appliances and heating, cooling, mechanical, electrical, security,
159 sprinkler, septic and plumbing systems, seawall, dock and pool equipment, if any, are and will be maintained in working
160 condition until closing; that the structures (including roofs, doors and windows) and pool, if any, are structurally sound
161 and watertight; and that torn or missing screens and missing roof tiles will be repaired or replaced. Seller warrants that
162 all open permits will be closed out and that Seller will obtain any required permits for improvements to the Property
163 prior to Closing Date. Seller does not warrant and is not required to repair cosmetic conditions, unless the cosmetic
164 condition resulted from a defect in a warranted item. Seller is not obligated to bring any item into compliance with
165 existing building code regulations unless necessary to repair a warranted item. "Working condition" means operating in
166 the manner in which the item was designed to operate and "cosmetic conditions" means aesthetic imperfections that
167 do not affect the working condition of the item, including pitted marcite; tears, worn spots and discoloration of floor
168 coverings/wallpapers/window treatments; nail holes, scratches, dents, scrapes, chips and caulking in bathroom
169 ceiling/walls/flooring/tile/fixtures/mirrors; cracked roof tiles; curling or worn shingles; and minor cracks in floor
170 tiles/windows/driveways/sidewalks/pool decks/garage and patio floors.

171 (2) **Professional Inspection:** Buyer may, at Buyer's expense, have warranted items inspected by a person who
172 specializes in and holds an occupational license (if required by law) to conduct home inspections or who holds a Florida
173 license to repair and maintain the items inspected ("professional inspector"). Buyer must, within 5 days from the end of the
174 Inspection Period, deliver written notice of any items that are not in the condition warranted and a copy of that portion of the

175 Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 3 of 8 Pages.
FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

inspector's written report dealing with such items to Seller. If Buyer fails to deliver timely written notice, Buyer waives Seller's warranty and accepts the items listed in subparagraph (a) in their "as is" conditions, except that Seller must meet the maintenance requirement.

(3) Repair: Seller will obtain repair estimates and is obligated only to make repairs necessary to bring warranted items into the condition warranted, up to the Repair Limit. Seller may, within 5 days from receipt of Buyer's notice of items that are not in the condition warranted, have a second inspection made by a professional inspector and will report repair estimates to Buyer. If the first and second inspection reports differ and the parties cannot resolve the differences, Buyer and Seller together will choose, and equally split the cost of, a third inspector, whose written report will be binding on the parties. If the cost to repair warranted items equals or is less than the Repair Limit, Seller will have the repairs made in a workmanlike manner by an appropriately licensed person. If the cost to repair warranted items exceeds the Repair Limit, either party may cancel this Contract unless either party pays the excess or Buyer designates which repairs to make at a total cost to Seller not exceeding the Repair Limit and accepts the balance of the Property in its "as is" condition.

(4) Permits: Seller shall close out any open permits and remedy any violation of any governmental entity, including but not limited to, obtaining any required permits for improvements to the Property, up to the Permit Limit, and with final inspections completed no later than 5 days prior to Closing Date. If final inspections cannot be performed due to delays by the governmental entity, Closing Date shall be extended for up to 10 days to complete such final inspections, failing which, either party may cancel this Contract and Buyer's deposit shall be refunded. If the cost to close out open permits or to remedy any violation of any governmental entity exceeds the Permit Limit, either party may cancel the Contract unless either party pays the excess or Buyer accepts the Property in its "as is" condition and Seller credits Buyer at closing the amount of the Permit Limit.

(b) Wood-Destroying Organisms: "Wood-destroying organism" means arthropod or plant life, including termites, powder-post beetles, oldhouse borers and wood-decaying fungi, that damages or infests seasoned wood in a structure, excluding fences. Buyer may, at Buyer's expense, have the Property inspected by a Florida-licensed pest control business to determine the existence of past or present wood-destroying organism infestation and damage caused by infestation. If the inspector finds evidence of infestation or damage, Buyer will deliver a copy of the inspector's written report to Seller within 5 days from the date of the inspection. If Seller previously treated the Property for the type of wood-destroying organisms found, Seller does not have to treat the Property again if (i) there is no visible live infestation, and (ii) Seller transfers to Buyer at closing a current full treatment warranty for the type of wood-destroying organisms found. Otherwise, Seller will have 5 days from receipt of the inspector's report to have reported damage estimated by a licensed building or general contractor and corrective treatment estimated by a licensed pest control business. Seller will have treatments and repairs made by an appropriately licensed person at Seller's expense up to the WDO Repair Limit. If the cost to treat and repair the Property exceeds the WDO Repair Limit, either party may pay the excess, failing which either party may cancel this Contract by written notice to the other. If Buyer fails to timely deliver the inspector's written report, Buyer accepts the Property "as is" with regard to wood-destroying organism infestation and damage, subject to the maintenance requirement.

(c) Walk-through Inspection/Reinspection: Buyer, and/or Buyer's representative, may walk through the Property solely to verify that Seller has made repairs required by this Contract, has met the Maintenance Requirement and has met contractual obligations. If Buyer, and/or Buyer's representative, fails to conduct this inspection, Seller's repair obligations and Maintenance Requirement will be deemed fulfilled.

8. RISK OF LOSS: If any portion of the Property is damaged by fire or other casualty before closing and can be restored by the Closing Date or within 45 days after the Closing Date to substantially the same condition as it was on Effective Date, Seller, will, at Seller's expense, restore the Property and deliver written notice to Buyer that Seller has completed the restoration, and the parties will close the transaction on the later of: (1) Closing Date; or, (2) 10 days after Buyer's receipt of Seller's notice. Seller will not be obligated to replace trees. If the restoration cannot be completed in time, Buyer may cancel this Contract and Buyer's deposit shall be refunded, or Buyer may accept the Property "as is", and Seller will credit the deductible and assign the insurance proceeds, if any, to Buyer at closing in such amounts as are (i) attributable to the Property and (ii) not yet expended in restoring the Property to the same condition as it was on Effective Date.

## TITLE

10. TITLE: Seller will convey marketable title to the Property by statutory warranty deed or trustee, personal representative or guardian deed as appropriate to Seller's status.

(a) Title Evidence: Title evidence will show legal access to the Property and marketable title of record in Seller in accordance with current title standards adopted by the Florida Bar, subject only to the following title exceptions, none of which prevent residential use of the Property: covenants, easements and restrictions of record; matters of plat; existing zoning and government regulations; oil, gas and mineral rights of record if there is no right of entry; current taxes; mortgages that Buyer will assume; and encumbrances that Seller will discharge at or before closing. Seller will, at least 2 days prior to closing, deliver to Buyer Seller's choice of one of the following types of title evidence, which must be generally accepted in the county where the Property is located (specify in Paragraph 5(c) the selected type). Seller will use option (1) in Palm Beach County and option (2) in Miami-Dade County.

(1) A title insurance commitment issued by a Florida-licensed title insurer in the amount of the purchase price and subject only to title exceptions set forth in this Contract.

(2) An existing abstract of title from a reputable and existing abstract firm (if firm is not existing, then abstract must be certified as correct by an existing firm) purporting to be an accurate synopsis of the instruments affecting title to the

Buyer ( ) ( ) and Seller ( ) ( ) acknowledge receipt of a copy of this page, which is Page 4 of 8 Pages.
FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

Property recorded in the public records of the county where the Property is located and certified to Effective Date. However, if such an abstract is not available to Seller, then a prior owner's title policy acceptable to the proposed insurer as a base for reissuance of coverage. Seller will pay for copies of all policy exceptions and an update in a format acceptable to Buyer's closing agent from the policy effective date and certified to Buyer or Buyer's closing agent, together with copies of all documents recited in the prior policy and in the update. If a prior policy is not available to Seller then (1) above will be the title evidence. Title evidence will be delivered no later than 10 days before Closing Date.

(b) Title Examination: Buyer will examine the title evidence and deliver written notice to Seller, within 5 days from receipt of title evidence but no later than Closing Date, of any defects that make the title unmarketable. Seller will have 30 days from receipt of Buyer's notice of defects ("Curative Period") to cure the defects at Seller's expense. If Seller cures the defects within the Curative Period, Seller will deliver written notice to Buyer and the parties will close the transaction on Closing Date or within 10 days from Buyer's receipt of Seller's notice if Closing Date has passed. If Seller is unable to cure the defects within the Curative Period, Seller will deliver written notice to Buyer and Buyer will, within 10 days from receipt of Seller's notice, either cancel this Contract or accept title with existing defects and close the transaction.

(c) Survey: Buyer may, at Buyer's expense, have the Property surveyed and deliver written notice to Seller, within 5 days from receipt of survey but no later than closing, of any encroachments on the Property, encroachments by the Property's improvements on other lands or deed restriction or zoning violations. Any such encroachment or violation will be treated in the same manner as a title defect and Buyer's and Seller's obligations will be determined in accordance with subparagraph (b) above.

## MISCELLANEOUS

**11. EFFECTIVE DATE; TIME; FORCE MAJEURE:**
(a) Effective Date: The "Effective Date" of this Contract is the date on which the last of the parties initials or signs and delivers the final offer or counteroffer. Time is of the essence for all provisions of this Contract.

(b) Time: All time periods will be computed in business days (a "business day" is every calendar day except Saturday, Sunday and national legal holidays). If any deadline falls on a Saturday, Sunday or national legal holiday, performance will be due the next business day. All time periods will end at 5:00 p.m. local time (meaning in the county where the Property is located) of the appropriate day.

(c) Force Majeure: Buyer or Seller shall not be required to perform any obligation under this Contract or be liable to each other for damages so long as the performance or non-performance of the obligation is delayed, caused or prevented by an act of God or force majeure. An "act of God" or "force majeure" is defined as hurricanes, earthquakes, floods, fire, unusual transportation delays, wars, insurrections and any other cause not reasonably within the control of the Buyer or Seller and which by the exercise of due diligence the non-performing party is unable in whole or in part to prevent or overcome. All time periods, including Closing Date, will be extended (not to exceed 30 days) for the period that the force majeure or act of God is in place. In the event that such "act of God" or "force majeure" event continues beyond the 30 days in this sub-paragraph, either party may cancel the Contract by delivering written notice to the other and Buyer's deposit shall be refunded.

**12. NOTICES:** All notices shall be in writing and will be delivered to the parties and Broker by mail, personal delivery or electronic media. Except for the notices required by Paragraph 3 of this Contract, Buyer's failure to deliver timely written notice to Seller, when such notice is required by this Contract, regarding any contingencies will render that contingency null and void and the Contract will be construed as if the contingency did not exist. Any notice, document or item delivered to or received by an attorney or licensee (including a transaction broker) representing a party will be as effective as if delivered to or by that party.

**13. COMPLETE AGREEMENT:** This Contract is the entire agreement between Buyer and Seller. Except for brokerage agreements, no prior or present agreements will bind Buyer, Seller or Broker unless incorporated into this Contract. Modifications of this Contract will not be binding unless in writing, signed or initialed and delivered by the party to be bound. Signatures, initials, documents referenced in this Contract, counterparts and written modifications communicated electronically or on paper will be acceptable for all purposes, including delivery, and will be binding. Handwritten or typewritten terms inserted in or attached to this Contract prevail over preprinted terms. If any provision of this Contract is or becomes invalid or unenforceable, all remaining provisions will continue to be fully effective. Buyer and Seller will use diligence and good faith in performing all obligations under this Contract. This Contract will not be recorded in any public records.

**14. ASSIGNABILITY; PERSONS BOUND:** Buyer may not assign this Contract without Seller's written consent. The terms "Buyer," "Seller," and "Broker" may be singular or plural. This Contract is binding on the heirs, administrators, executors, personal representatives and assigns (if permitted) of Buyer, Seller and Broker.

## DEFAULT AND DISPUTE RESOLUTION

**15. DEFAULT:** (a) Seller Default: If for any reason other than failure of Seller to make Seller's title marketable after diligent effort, Seller fails, refuses or neglects to perform this Contract, Buyer may choose to receive a return of Buyer's deposit without waiving the right to seek damages or to seek specific performance as per Paragraph 16. Seller will also be liable for the full amount of the brokerage fee. (b) Buyer Default: If Buyer fails to perform this Contract within the time specified, including timely payment of all deposits, Seller may choose to retain and collect all deposits paid and agreed to be paid as liquidated damages or to seek specific performance as

Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 5 of 8 Pages.
FAR-8  4/07  © 2007  Florida Association of REALTORS®  All Rights Reserved

206  per Paragraph 16; and Broker will, upon demand, receive 50% of all deposits paid and agreed to be paid (to be split equally among
207  Broker) up to the full amount of the brokerage fee.

208  **16. DISPUTE RESOLUTION:** This Contract will be construed under Florida law. All controversies, claims and other matters in
209  question arising out of or relating to this transaction or this Contract or its breach will be settled as follows:
210  (a) Disputes concerning entitlement to deposits made and agreed to be made: Buyer and Seller will have 30 days from the
211  date conflicting demands are made to attempt to resolve the dispute through mediation. If that fails, Escrow Agent will
212  submit the dispute, if so required by Florida law, to Escrow Agent's choice of arbitration, a Florida court or the Florida Real
213  Estate Commission ("FREC"). Buyer and Seller will be bound by any resulting award, judgment or order. A broker's
214  obligation under Chapter 475, FS and the FREC rules to timely notify the FREC of an escrow dispute and timely resolve the
215  escrow dispute through mediation, arbitration, interpleader or an escrow disbursement order, if the broker so chooses,
216  applies to brokers only and does not apply to title companies, attorneys or other escrow companies.
217  (b) All other disputes: Buyer and Seller will have 30 days from the date a dispute arises between them to attempt to
218  resolve the matter through mediation, failing which the parties will resolve the dispute through neutral binding arbitration
219  in the county where the Property is located. The arbitrator may not alter the Contract terms or award any remedy not
220  provided for in this Contract. The award will be based on the greater weight of the evidence and will state findings of fact
221  and the contractual authority on which it is based. If the parties agree to use discovery, it will be in accordance with the
222  Florida Rules of Civil Procedure and the arbitrator will resolve all discovery-related disputes. Any disputes with a real
223  estate licensee or firm named in Paragraph 19 will be submitted to arbitration only if the licensee's broker consents in
224  writing to become a party to the proceeding. This clause will survive closing.
225  (c) Mediation and Arbitration; Expenses: "Mediation" is a process in which parties attempt to resolve a dispute by
226  submitting it to an impartial mediator who facilitates the resolution of the dispute but who is not empowered to impose a
227  settlement on the parties. Mediation will be in accordance with the rules of the American Arbitration Association ("AAA") or
228  other mediator agreed on by the parties. The parties will equally divide the mediation fee, if any. "Arbitration" is a process in
229  which the parties resolve a dispute by a hearing before a neutral person who decides the matter and whose decision is
230  binding on the parties. Arbitration will be in accordance with the rules of the AAA or other arbitrator agreed on by the
231  parties. Each party to any arbitration will pay its own fees, costs and expenses, including attorneys' fees, and will equally
232  split the arbitrators' fees and administrative fees of arbitration.

## ESCROW AGENT AND BROKER

224  **17. ESCROW AGENT:** Buyer and Seller authorize Escrow Agent to receive, deposit and hold funds and other items in escrow and,
225  subject to clearance, disburse them upon proper authorization and in accordance with Florida law and the terms of this Contract,
226  including disbursing brokerage fees. The parties agree that Escrow Agent will not be liable to any person for misdelivery of escrowed
227  items to Buyer or Seller, unless the misdelivery is due to Escrow Agent's willful breach of this Contract or gross negligence. If Escrow
228  Agent interpleads the subject matter of the escrow, Escrow Agent will pay the filing fees and costs from the deposit and will recover
229  reasonable attorneys' fees and costs to be paid from the escrowed funds or equivalent and charged and awarded as court costs in
230  favor of the prevailing party. All claims against Escrow Agent will be arbitrated, so long as Escrow Agent consents to arbitrate.

231  **18. PROFESSIONAL ADVICE; BROKER LIABILITY:** Broker advises Buyer and Seller to verify all facts and representations that are
232  important to them and to consult an appropriate professional for legal advice (for example, interpreting contracts, determining the
233  effect of laws on the Property and transaction, status of title, foreign investor reporting requirements, the effect of property lying
234  partially or totally seaward of the coastal construction control line, etc.) and for tax, property condition, environmental and other
235  specialized advice. Buyer acknowledges that Broker does not reside in the Property and that all representations (oral, written or
236  otherwise) by Broker are based on Seller representations or public records. Buyer agrees to rely solely on Seller, professional
237  inspectors and governmental agencies for verification of the Property condition, square footage and facts that materially affect
238  Property value. Buyer and Seller respectively will pay all costs and expenses, including reasonable attorneys' fees, at all levels,
239  incurred by Broker and Broker's officers, directors, agents and employees in connection with or arising from: Buyer's or Seller's
240  misstatement or failure to perform contractual obligations. Buyer and Seller hold harmless and release Broker and Broker's officers,
241  directors, agents and employees from all liability for loss or damage based on (1) Buyer's or Seller's misstatement or failure to
242  perform contractual obligations; (2) Broker's performance, at Buyer's and/or Seller's request, of any task beyond the scope of
243  services regulated by Chapter 475, F.S., as amended, including Broker's referral, recommendation or retention of any vendor; (3)
244  products or services provided by any vendor; and (4) expenses incurred by any vendor. Buyer and Seller each assume full
245  responsibility for selecting and compensating their respective vendors. This paragraph will not relieve Broker of statutory obligations.
246  For purposes of this paragraph, Broker will be treated as a party to this Contract. This paragraph will survive closing.

247  **19. BROKERS:** The licensee(s) and brokerage(s) named below are collectively referred to as "Broker". Instruction to Closing
248  Agent: Seller and Buyer direct closing agent to disburse at closing the full amount of the brokerage fees as specified in separate
249  brokerage agreements with the parties and cooperative agreements between the brokers, except to the extent Broker has
250  retained such fees from the escrowed funds. In the absence of such brokerage agreements, closing agent will disburse
251  brokerage fees as indicated below. This paragraph will not be used to modify any MLS or other offer of compensation made by
252  Seller or listing broker to cooperating brokers.

253  Buyer ( _____ ) ( _____ ) and Seller ( _____ ) ( _____ ) acknowledge receipt of a copy of this page, which is Page 6 of 8 Pages.

FAR-9   4/07   © 2007   Florida Association of Realtors®   All Rights Reserved

364\* __ANALOU MANENT LIC 3164788__
365 Selling Sales Associate/Licence No.

366\*
367 Listing Sales Associate/License No.

SUNNY INTERNATIONAL REALTY
Selling Firm/Brokerage Fee: ($ or % of Purchase Price)

Listing Firm/Brokerage fee: ($ or % of Purchase Price)

368
### ADDENDA AND ADDITIONAL TERMS

369 **20. ADDENDA:** The following additional terms are included in the attached addenda and incorporated into this Contract (check if
360 applicable):

361\* ☑ A. Condo. Assn.
362\* ☐ B. Homeowners' Assn.
363\* ☐ C. Seller Financing
364\* ☐ D. Mort. Assumption
365\* ☐ E. FHA Financing
366\* ☐ F. VA Financing
367\* ☐ G. New Mort. Rates

☐ H. As Is w/Right to Inspect
☐ I. Inspections
☐ J. Insulation Disclosure
☐ K. Pre-1978 Housing Stmt. (LBP)
☐ L. Insurance
☐ M. Housing Older Persons
☐ N. Lease purchase/Lease option

☐ O. Interest-Bearing Account
☐ P. Back-up Contract
☐ Q. Broker - Pers. Int. in Prop.
☐ R. Rentals
☐ S. Sale/Lease of Buyer's Property
☐ T. Rezoning
☐ U. Assignment

☐ V. Prop. Disclosure Stmt.
☐ W. FIRPTA
☐ X. 1031 Exchange
☐ Y. Additional Clauses

☐ Other_____
☐ Other_____

368 **21. ADDITIONAL TERMS:** _____
369\* _____
370\* _____
371\* _____
372\* _____
373\* _____
374\* _____
375\* _____
376\* _____
377\* _____
378\* _____
379\* _____
380\* _____
381\* _____
382\* _____
383\* _____
384\* _____
385\* _____
386\* _____
387\* _____
388\* _____
389\* _____
390\* _____
391\* _____
392\* _____
393\* _____
394\* _____
395\* _____
396\* _____
397\* _____
398\* _____
399\* _____
400\* _____
401\* _____
402\* _____
403\* _____
404\* _____
405\* _____
406\* _____
407\* _____
408\* _____
409\* _____

410\* Buyer (____) (____) and Seller (____) (____) acknowledge receipt of a copy of this page, which is Page 7 of 8 Pages.
FAR-9  4/07  © 2007  Florida Association of Realtors®  All Rights Reserved

411 This is intended to be a legally binding contract. If not fully understood, seek the advice of an attorney prior to signing.

412 **OFFER AND ACCEPTANCE**
413 (Check if applicable) ☐ Buyer received a written real property disclosure statement from Seller before making this Offer)
414 Buyer offers to purchase the Property on the above terms and conditions. Unless this Contract is signed by Seller and a copy
415 delivered to Buyer no later than _____ ☐ a.m. ☐ p.m. on _____, _____, this offer will be revoked
416 and Buyer's deposit refunded subject to clearance of funds.

417 **COUNTER OFFER/REJECTION**
418 ☐ Seller counters Buyer's offer (to accept the counter offer, Buyer must sign or initial the counter offered terms and deliver a copy
419 of the acceptance to Seller. Unless otherwise stated, the time for acceptance of any counteroffers shall be 2 days from the
420 date the counter is delivered. ☐ Seller rejects Buyer's offer.

| | |
|---|---|
| 421 Date: __1 10 12__ | Buyer: _____ |
| 422 | Print name: __PATRICK GAILLARD__ |
| | |
| 423 Date: _____ | Buyer: _____ |
| 424 Phone: _____ | Print name: _____ |
| 425 Fax: _____ | Address: __674 Chemin des Fourchas__ |
| 426 E-mail: _____ | __13100 Le Tholonet FRANCE__ |
| | |
| 427 Date: __01/14/2012__ | Seller: _____ |
| 428 | Print name: __FLORIDA PRESTIGE__ |
| | |
| 429 Date: _____ | Seller: _____ |
| 430 Phone: _____ | Print name: _____ |
| 431 Fax: _____ | Address: _____ |
| 432 E-mail: _____ | _____ |

433 **Effective Date:** __1 10 12__ (The date on which the last party signed or initialed and delivered the final offer or counteroffer).

434 Buyer (____)(____) and Seller (____)(____) acknowledge receipt of a copy of this page, which is Page 8 of 8 Pages.

The Florida Association of Realtors and local Board/Association of Realtors make no representation as to the legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions. This form is available for use by the entire real estate industry and is not intended to identify the user as a Realtor. Realtor is a registered collective membership mark that may be used only by real estate licensees who are members of the National Association of Realtors and who subscribe to its Code of Ethics.

The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of blank forms by any means including facsimile or computerized forms.

FAR-9  4/07  © 2007  Florida Association of Realtors®  All Rights Reserved